DAVID CHANEY AND WIFE, *vs.* WILLIAM TIPTON AND WIFE, AND OTHERS.—*December* 1845.

Upon a bill filed by husband and wife, against the co-heirs of the wife, to procure the division or sale of their father's real estate, of which he died seized and intestate, the fact, that one of the co-heirs, defendants, had purchased the wife's interest from her husband, and also the interest of the other heirs, no conveyance having been procured from the wife, in the mode prescribed by law, to pass the real estate of the *feme covert*, will not prevent the county court from issuing a commission, and directing and allowing an election to be made by the parties entitled, according to the act regulating descents.

After an election is made, and the bonds for the purchase money are about to be given; or if the election shall be refused, when the proceeds of sale are about to be distributed, the court will take into consideration the rights of the purchaser, and adjust the details of the transaction accordingly.

The rights of the purchaser, and the means of securing his interest, must be determined by the nature of the interest acquired by him.

Under the act to direct descents, the alienee of an heir, in the cases therein provided for, is authorized to stand in the place of his vendor, as to the right of election or distribution.

If his interest or claim be such as a court of equity will specifically enforce, the remedy must be sought by the proper process of the Chancery court: for any other contract in relation to land, the ordinary remedies at law, or in equity, as the case may require, will be open to the party entitled.

APPEAL from the Equity side of *Allegany* county court.

This cause was before the court in 1840, and is reported in 11 *G. & J.*, 253, and then remanded for further proceedings.

In an amended bill, the appellants alleged, that *Susannah Chaney* is one of the heirs at law of *Thomas Stallings*, deceased and intestate, leaving at the time of his death the following children and heirs at law, besides the said *Susannah*, viz: *Mary*, wife of *William Tipton*, *Lloyd Stallings*, *Elizabeth*, wife of *Samuel North*, all of full age; that at the time of his death, the said *Thomas* was seized of a large real estate, and that his heirs cannot agree among themselves as to the division thereof. Prayer for a commission under the act to direct descents, and proceed according to its provisions to divide the estate, &c.

A commission was thereupon ordered by the court 15th May 1841, and issued on the 11th August following. The commissioner's return, stated, they had determined that the estate of the deceased could not be divided, without loss to the parties interested therein, as named in the commission, and valued the estate at $5,580.50.

On the 13th May 1842, the court, (BUCHANAN, A. J.,) ordered, that the report and return of the commissioners be confirmed; that the several parties, entitled to their election under the act of 1820, ch. 191, and its supplements, be and appear in this court on the 2nd day of the next October term of this court, to exercise and determine their respective rights of election, provided that the confirmation of the report of the commissioners by the court, and the election of any of the parties to take the property at the valuation of the commissioners, or their refusal to take it at said valuation, shall not prejudice the defendants, nor be of any avail to the complainants, if the court shall, on the final hearing, be of opinion, that the complainant is not entitled to the relief sought by the bill; the object of this order being only to facilitate the proceedings, and bring the cause to a final issue, with as little delay as possible.

Nothing being done under the order of May 1842, the cause at October term 1842, was ordered to set down for final hearing at the next term.

At May term 1843, the county court, (BUCHANAN, A. J.) decreed:—

The bill seeks for a sale of the real estate of *Thomas Stallings*, deceased, in order that the proceeds thereof may be distributed among his heirs at law, of whom *Mrs. Chaney*, the wife of *David Chaney*, is one; which is resisted by *Lloyd Stallings*, one of the defendants, on the ground, that before the institution of the suit, he, the defendant, purchased of the complainants all their interest in the estate of the said *Thomas Stallings*, their father, and that, therefore, they have no right to call for a sale of the estate.

The contract for a sale of the interest in the estate of *T. S.*, and proof of the payment of part of the purchase money by *L. S.*, may be seen by looking into the proceedings, and need not

here be more particularly referred to. It may be admitted, that the contract or agreement entered into by *Chaney and wife* with *L. S*, on the 26th April 1830, was void as it respects *Mrs. Chaney*. Yet it by no means follows, that it was not a binding contract in regard to *C.*, himself, who was competent to contract for the sale of their interest in the estate of *T. S.* which decended to his children, as stated in the complainant's bill. The reason why the contract was void in regard to *Mrs. C.*, is, that she was a *feme covert*, who, in contemplation of law, could make no binding contract, and whose contracts consequently, are considered, both at law and in equity, as void and inoperative, and such as will not be enforced against her; but the husband has no such privilege, and although he can make no contract which can bind the wife's estate, unless it be by deed, duly executed and acknowledged, pursuant to the provisions of the act of Assembly, in such cases made and provided, yet he may make a contract for the sale of his wife's real estate, which would be binding on himself, and which the law would enforce against him.

In this case, *C. and wife* agreed to sell her interest in her father's estate to the defendant, *L. S.*, who paid them about $500, part of the purchase money, and yet *C.* is prosecuting a bill for the sale of *T. S's* real estate, for the sale of which to the defendant, *L. S.*, he has paid him about $500, as before remarked; now, although this payment cannot affect *Mrs. C's* right or title to the land in question, in case she should survive her husband, yet her husband cannot be permitted to sustain such a suit in the face of his agreement, under the circumstances of the case.

If such a claim should be sustained, would it not be to allow him to keep his wife's estate, and also the purchase money, which the defendant has paid for it, and would not such a state of things be abhorrent to justice?

If *C. and wife* are entitled to the land, notwithstanding the agreement and payment aforesaid, let them prosecute their suit at law, where, perhaps, they may be entitled to recover the possession of the land, the legal title to it not having been conveyed by them to the defendant. But, this is an application

to equity, and if the claim is in violation of equity and justice, how can it receive the sanction of this court? To get over this difficulty, the complainants contend, that the defendant failed to make his payments punctually at the times specified, and that, consequently, the contract ought not to be enforced against them, as time was made an essential part of the contract, and was an inducement with them to make it. Now, suppose this to be the true construction of the agreement, and that the court would not enforce it against the complainants, after the failure of the defendant to make the payments at the periods fixed. upon by the contract, still it does not follow, that the complainants are entitled to recover in this case. What if the payments had been punctually made by the defendant, could the complainant, in that case, be entitled to the decree of this court? and yet it is apparent, that in such case, the rights of *Mrs. C.* would not be affected by it; and in the event of her surviving her husband, she would be entitled to recover, because the agreement, although binding on her husband, was, nevertheless, void as to her. But the defendant did not pay the whole of the purchase money, agreeably to the stipulations of the contract. He paid only part of it, say about $500, which the complainant, *David Chaney*, received, and still retains; and surely, if he could not claim a decision of this court for a sale of the land, in case the whole of the purchase money had been paid, because it would be iniquitous to sustain such a claim, it follows, that he is equally precluded, on principles of justice, from recovering under the circumstances of the case, whilst he retains the $500 which have been paid him. Shall he be permitted to affirm and disaffirm his contract, *uno flatu?* Even at law, such a proceeding could not be tolerated, much less in this court.

If *C.* contends, that the failure of the defendant to pay the purchase money at the times stipulated, released him from the obligation of the contract, and that he was no longer bound by it, he ought to have refunded, or at least offered to refund, what had been paid by the defendant on the contract. He has, however, done no such thing. He retains the payment made to him, and seeks to recover the whole of the land, as if

no payment had been made to him. Now, is this just or equitable?

On a sale at law, the vendee, if he claims to rescind the contract, must restore, or, at least offer to restore, the articles purchased, before he can resist the claim of the vendor. The vendee will not be permitted to retain the things purchased, and at the same time defeat the vendor of the purchase money; and the converse of the proposition holds equally good. A vendor who has received part of the purchase money from the vendee, cannot rescind the contract of sale for any supposed default of the vendee, in not complying with the terms of sale, unless he shall have refunded, or, at least, offered to refund the payments made to him, and thereby put the vendee in the condition he was in when the contract was made. If such be the rule at law, how much stronger is it in equity, where the court professes to act on equitable principles, and whose decisions ought to have the sanction of equity and justice. Here, the defendant paid *C.* about $200 in cash, and gave him a negro woman, valued at $300, in all about $500, in part payment of the land. The negro woman *C.*, sold for $500, and he retains the whole, and has not refunded, nor offered to refund a cent of it before the institution of the suit. What if the defendant had paid the whole of the purchase money, *Mrs. C.* would not have been any more bound by it than she is at present; but could her husband, in such case, be permitted to sustain a bill in equity, against his own contract for a sale of the land? To sustain such a proceeding would be, to countenance dishonesty and fraud, which could not be tolerated in any court of justice. Now, if *Chaney* had a right to rescind the contract, because it was not punctually fulfilled by the defendant, surely he ought not to withhold what the defendant had paid on the contract; but before the institution of the suit, it was his duty to have refunded, or, at least, offered to refund what had been paid him. This would have been honest and just between the parties, and had he done so, would have removed the barrier, which now exists, to the relief prayed by the bill. The complainants come into court, and ask its interposition in their favor, but before the court will interpose, it

will take care that injustice is not done to the defendant. Let them do justice to him before they ask for a decree against him. This court, in doing justice to the complainants, will not be unjust to the defendant. The dismissal of the bill, will not impair the rights of *Mrs. C.*, but prevent her husband from doing injustice to the defendant. She may, if she survives her husband, recover her portion of her father's estate, and her heirs at law may do the same. By marriage, a husband gains a title to the rents and profits of his wife's real estate during the continuance of the coverture, except where he becomes tenant by the curtesy, in which latter case, he acquires a title to her estate during his life, 2 *Bl. Comm.*, 434; and chancery will not interfere with the marital rights of the husband over his wife's real estate, so long as he maintains her to the best of his ability, they living together. *Vaughan vs. Buck*, 7 *Jurist*, 388, *July No. of the Law Lib.*, 237.

In regard to *C.*, then, it was *quasi*, a sale of his own estate, for although the fee was in the wife, yet the property was his during the coverture; and if he could not vacate the sale of his own estate, without a repayment or tender of what had been paid by *Stallings*, on the purchase of it, neither can he in this case, for he was competent to sell it during the coverture, and if he could not vacate the sale of his own estate, without a repayment or tender of what had been paid by *Stallings*, on the purchase of it, neither can he in this case, for he was competent to sell it during the coverture, and the purchaser had a right to hold it for that period, with which right, equity will not interfere. The property was liable to be sold for *O's* debts, and if it had been sold under a *fi. fa.* against him, the purchaser could not be rightfully disturbed by *Chaney and wife* during the coverture. For these and other reasons that might be suggested, the court is of opinion, that the bill cannot be sustained.

On the 26th day of April 1837, this court dismissed the bill in this case, from which there was an appeal to the Court of Appeals, which remanded the cause to this court, with instructions, that the bill should be amended, so as to make it an application to the court for a sale or division of the land, under

the law of descents. This has been done, and other proceedings had, as will appear by the record. It is contended by the complainants, that the decree of the Court of Appeals is conclusive of their right to recover, and that this court has nothing left to it but to carry the decree into effect. If this court thought that the Court of Appeals intended to decide, definitively, the rights of the parties, there would not be a moments hesitation on our part to act in conformity to the views of the superior tribunal, whatever might be our own impression of the subject; we know it would be our duty to do so, and it would be always highly gratifying to us to have the instructions of that high tribunal as our guide, in deciding controversies before us; so far, however, from deciding on the merits of the case, the Court of Appeals emphatically say, "that the substantial merits of the cause will not be determined by the reversing or affirming the decree of *Allegany* county court, setting as a court of equity, and that the purpose of justice will be advanced by remanding the said cause for further proceedings." The Court of Appeals, then, did not decide the cause on its merits, but decided, that the complainants had misconceived their case, and remanded it under the provisions of the act of 1832, ch. 320, to this court, for the purpose of amending the pleadings, and causing such other proceeding to be had, under the direction of this court, as should be necessary for determining the cause upon its merits.

On the 12th day of October 1844, decreed, that the complainant's bill be dismissed, with costs.

From this decree the complainants appealed to this court.

The cause was argued before Archer, C. J., Dorsey, Chambers, Magruder and Martin, J.

By Pigman and McMahon for the appellants, and
By W. Price for the appellees.

Chambers, J., delivered the opinion of this court.

The material questions in this case are concluded by the opinion of this court, on the former appeal, and reported in 11 *G. & J.*, 255. We adhere to the opinion there expressed.

In pursuance to the mandate of this court, the bill and proceedings have been amended in the court below; and we think that court erred, in not proceeding with the case, in obedience to the acts of Assembly regulating descents, by directing and allowing the election to be made by the parties entitled, according to the provisions of those acts.

The contract of sale, alleged to have been made by *Chaney*, ought not to defeat the proceeding.

The estate descended, amongst others, to *Mrs. Chaney*, the wife, and no contract made by her husband alone, or even with her consent and concurrence, unless in the mode prescribed by law to pass the real estate of a *feme covert*, could divest her of that estate.

It is in virtue of her estate, as one of the heirs at law, that this proceeding has been instituted, and the contract of the husband to sell her interest, or his own, was not a sufficient reason on which to dismiss it.

The effect, in other respects, of such a contract, and of payments made to the husband in virtue of it, as well as other matters alluded to and discussed in the argument, are not now properly for review in this court, which has not the duty of adjusting the details; the predicament of the case not being such as to make this adjustment, at this time, practicable, but will be proper for consideration when the election shall be made, and the bonds are about to be given; or if the election shall be refused, when the proceeds of sale shall be distributed.

If *Stallings*, one of the appellees, has acquired the interest of other co-heirs, as is alleged, the means of securing that interest must be determined by the nature of the interest acquired.

The acts of Assembly referred to, authorise the alienee of an heir, in the cases therein provided for, to stand in the place of the vendor, as to the right of election or distribution. If the interest or claim be such as a court of equity will specifically enforce, the remedy must be sought by the proper process of the Chancery court. For any other contract in relation to the land, the ordinary remedies at law, or in equity, as the case may require, will be open to the party entitled. The court will sign a decree, reversing the decree of the court below, and

remanding the case, to be proceeded in according to the views above expressed.

DECREE REVERSED AND CAUSE REMANDED.

DORSEY, J., dissented.