(Decided October 8th, 1862.)

CECELIA STEFFEY and WILLIAM CRUMRINE, and MARY, his wife, *vs.* ELIZA STEFFEY, mother and next friend of CECE-LIA STEFFEY.

A and B, being seized of certain lands in undivided moieties, in fee, B, to-gether with C, her husband, by agreement under seal, dated May the 3rd, 1854, contracted to sell to A all their right and title to said lands, and C received two-thirds of the purchase money in cash, and the three notes of A for the balance thereof, the notes reciting in substance that they were given in consideration of said purchase. On a bill filed by the widow and heir at law of A, for a specific performance of said agreement—HELD:

That the said contract and evidence relating thereto are sufficient, in equity, to convey the estate and interest of the husband.

That the date of the contract brings it within the operation of the Act of Assembly of 1715, ch. 47, sec. 11; 1807, ch. 52; 1808, ch. 73; 1825, ch. 58; and 1830, ch. 164, prescribing the manner in which married women shall be barred of their inheritance or dower; and according to the judicial interpretation of these Acts, the instrument signed by B and C is inopera-tive and void as to the wife.

APPEAL from the Equity Side of the Circuit Court for Carroll county.

This is an appeal from a decree passed in the case of a bill in equity, filed by the appellee against the appellants. The proceedings in the cause, and the principal matters of evidence, are set forth in the opinion of this Court.

The parol testimony referred to, but not incorporated in the opinion of the Court, is as follows:

Eli Fuhrman proved that he saw William and Mary

Crumrine sign the agreement, exhibit B., and witnessed its execution at their request ; that at the same time, also at their request, five notes were drawn, for $20 each, by Michael Steffey, for the $100 mentioned in the agreement, and by him signed, which, at the instance of said Steffey, were also witnessed by him, the said Fuhrman ; that said notes were then delivered by the said Steffey to William Crumrine, with the remark, "I will pay these notes to Philip Crumrine," to which William Crumrine assented. These notes bear date the 3rd of May 1854, each being for the sum of $20, in favor of William Crumrine, and are payable, respectively, in eight days, six months and one year from date. The first of them states that it is given "for a good right and title of the property of Eve Steffey, wife of John Steffey;" the second, that it is "for a good right and title of all claims ;" and the third, that it is "for good right and title of the real property of Eve Steffey, wife of John Steffey."

Jacob Munche proved that William Crumrine had stated to him, since the death of Michael Steffey, that he had received $325, on account of the purchase money of said land.

Both of said witnesses proved, on their cross-examination, that the land, at the date of the agreement, was about $1200.

In the decree passed after a hearing of the cause, the Court below (NELSON, J.) says : "Although the agreement for the sale of Mary Crumrine's moiety of the land, in the proceedings mentioned, to Michael Steffey, is obscurely drawn, yet the intention of both the vendors, William Crumrine and wife, is perfectly manifest, and the full purchase money having been paid, Crumrine and wife have no further interest in said land, and that Cecelia Steffey is clearly entitled to the whole of the land, subject to the dower right of her mother therein," and then goes on to

pass a decree for the sale of the same, for the purpose of distributing the whole proceeds between the said Cecelia and her mother, "to the exclusion of the defendants, William Crumrine and Mary, his wife." From this decision and decree the defendants, William Crumrine and Mary Crumrine, his wife, appealed.

The cause was argued before Bowie, C. J., and Bartol and Cochran, J.

*O. Miller, W. P. Maulsby* and *J. E. Smith* for the appellants:

1st. A decree for specific performance is not *ex debito justitiæ,* but rests in the sound discretion of the Court, to be given or refused, as the particular circumstances of each case may demand. The contract sought to be specifically executed, must be fair, just, reasonable, *bona fide,* mutual and certain in all its parts; and if any of these ingredients are wanting, or if there be a doubt upon any one of these points, it is enough to refuse relief. 6 *Gill,* 66, *Dorsey vs. Wayman, et al.* 4 *Md. Rep.,* 59, *Wardsworth vs. Maning, et al.* 4 *Md. Rep.,* 459, *Mundorf & Wife, vs. Kilbourn, et al.* 5 *Md. Rep.,* 18, *Stoddert, et al., vs. Tuck, Ex'r of Bowie, et al.* 4 *Gill,* 472, *Geiger, et al., vs. Green.* 1 *H. & J.,* 224, *Carberry vs. Taneyhill.* 3 *H. & McH.,* 324, *Perkins vs. Wright.* 8 *Gill,* 275, *Waters vs. Howard, et al.* 10 *Md. Rep.,* 282, *Rider & Trotter, vs. Gray, et al.*

2nd. Testing this contract by these rules, it is not such an one as a Court of Equity will enforce. It is, to say the least of it, obscurely drawn, it is vague and uncertain, and doubtful in its terms, and from all the circumstances to which the Court can look for its construction, it is doubtful whether the parties meant to contract to the extent of conveying the wife's inheritance. The rule is clear, that a contract "must be fair, just and reasonable in all its parts," and it must not appear doubtful, from the circumstances, whether

the party meant to contract to the extent to which he is sought to be charged. 4 *Gill*, 475. *Story's Eq.; sec.* 751. 2 *Sch. & Lef.*, 554, *Harnet vs. Yielding.* 10 *Md. Rep.*, 285. And in this connection it is to be noted, that though in equity, in a case in which it is clear that the parties understood their bargain, specific performance will not be refused on the mere ground of inadequacy of consideration, (9 *Gill*, 34,) yet such inadequacy may properly be looked to in construing the contract in reference to the extent to which the parties intended to contract. And especially is this the case where one of the contracting parties is a married woman, and it is insisted that she has parted with her whole inheritance in real estate for less than half its value. The Court, in construing the contract, will look to all these matters—the parties, the subject matter of the contract, the circumstances under which, and the consideration upon which, it was made.

3rd. But apart from all considerations in relation to the specific performance of contracts, this contract upon its face, and upon the true construction thereof, cannot be regarded as a contract on the part of Mrs. Crumrine, to pass her interest in the land. Looking to the whole contract, and giving to it, and every part of it, due consideration, the true construction is, that it operates to pass only the interest which the husband had by virtue of his marital rights in the land.

4th. This contract cannot operate to bar the wife of her inheritance, because it is not executed according to the requirements of our Acts of Assembly. The Act of 1715, chapter 47, sec. 11, expressly provides, that a *feme covert* shall not be barred of her dower or inheritance, except by an acknowledgment of a deed, on separate and private examination, in the mode therein specified. See also the Acts of 1807, ch. 52; 1808, ch. 73; 1825, ch. 58; and 1830, ch. 164. These laws prescribe the form and the only

mode in which a *feme covert* can be barred of her dower or inheritance. At common law she could make no contract, much less could she contract to convey her real estate. These Acts of Assembly provide a mode in which she can dispose of her inheritance and bar her dower. Their requirements are binding as well in Courts of Equity as of Law; they say she *"shall not otherwise"* be barred of her inheritance or dower. It may also be well argued that the provision of our Constitution, (Art. 3, sec. 28,) which declares that the Legislature "shall pass laws necessary to protect the property of the wife from the debts of the husband during her life, and for securing the same to her issue after her death," restores the common law disability of the wife, so far as the conveyance or contract for the conveyance of her inheritance is concerned. At all events, it shows that no greater power of conveying or contracting to convey her real estate, was to be given her; for instance, a law enabling her to convey by such a contract as this, would be against the plain provisions of the Constitution.

*W. N. Hayden,* for the appellees:

The only questions in controversy in this case, arise on the contract in writing, and under seal, marked exhibit B. Will the Court decree a specific performance of that contract? It is fair, just, reasonable, *bona fide,* mutual and certain in all its parts. Although it is inartistically drawn, yet, in the language of the Judge who passed the decree below, "the intention of both the vendors, William Crumrine and wife, is perfectly manifest." It is certain as to the parties, as to the consideration, as to the land sold, and as to the quantity of the estate to be conveyed. It is mutual; as, for the money paid by Steffey he was to have the land. It is fair, just and *bona fide.* It must be presumed to be so, until the contrary is proved. It is alleged, in the appellants' answer, to have been obtained by fraud; but there is no proof of it, and fraud is never presumed. The

defendants are not required by the bill to answer under oath, and the answer is not therefore evidence. Defensive averments in an answer, not responsive to the bill, unsupported by proof, are disregarded at the hearing. 3 *Gill*, 408, *Fitzhugh vs. McPherson*. Every allegation in the answer, not responsive to the bill, but setting forth matter in avoidance, is denied by the general replication, and must be fully proved, or have no effect. 3 *Bl.*, 125, *Salmon vs. Claggett*. *Ibid.*, 551, *Neal vs. Hagthrop*.

The only fact or circumstance proved, tending to show fraud, is that the property was worth more than Steffey agreed to pay for it; but mere inadequacy of consideration, is not a sufficient ground for refusing to decree the specific performance of a contract under seal, containing mutual stipulations. 5 *Gill*, 287, *Young vs. Frost*.

Cannot this contract bar the wife of her inheritance, although it is not executed according to the requirements of the Acts of Assembly of 1715, ch. 47; 1807, ch. 52, &c.? These several Acts of Assembly were intended to provide a more easy, cheap and expeditious mode for conveying the wife's interest in land, than the forms and modes of the common law. 3 *H. & J.*, 376, *Lawrence vs. Heister*. They were not intended to secure the wife's property more effectually than by the forms of the common law, viz: common recovery and levying a fine. The private examination was observed in levying a fine.

Art. 3, sec. 38, of the Constitution, which declares that "the Legislature shall pass laws necessary to protect the property of the wife from the debts of the husband, during her life, and for securing the same to her issue, after her death," imposes a duty on the Legislature, but cannot operate on the community until the Legislature shall have acted. This principle is settled in the case of *Bandel vs. Isaac*, 13 *Md. Rep.*, 202. Indeed the Act of 1856, simplifying the forms of conveyance, and also the provisions of

the Code of Public General Laws, on the same subject, have dispensed with the private examination altogether. Why, then, should not a Court of Equity decree against a wife when she unites with her husband in the execution of an agreement in writing, under seal, and in her answer in the case admits the execution of the agreement? The covenant in the agreement is in general terms, and shall be taken to mean a legal title in fee. 8 *Gill,* 337, *Owings vs. Baldwin.* A Court of Equity would decree a specific performance of this covenant, especially as it was made by the wife's consent. 1 *Roper on Prop.*, 532, and cases there cited. 3 *Peere Wms.*, 187, *Hall vs. Hardy.* 5 *Vin. Abr.*, 547, *Barrington vs. Horn.* 7 *Ves.*, *Jr.*, 475, *Withers vs. Pinchard. Ibid.*, 474, *Morris vs. Stephenson.* Also, 1 *Br. on Husb. and Wife,* 183, where all the cases on this subject are collected and commented on.

The only cases in the Maryland books that appear to have any bearing on the main question involved in this cause, are those of 11 *Md. Rep.*, 469, *Johns vs. Reardon,* and 3 *Gill,* 327, *Chaney vs. Tipton.* By a careful analysis of these cases, it will appear that the question involved in the case at bar, was not decided in either of them.

Bowie, C. J., delivered the opinion of this Court:

In form, the bill filed by the complainants (the appellees) in this case, was an application to the Circuit Court of Carroll county, as a Court of Equity, for the sale of certain real estate, the proceeds to be invested for the benefit of a minor heir, one of the complainants. In effect, however, it is a bill for the specific performance of a supposed contract of sale, made by the appellants with Michael Steffey, (the father of one of the appellees,) through whom, and by which contract, she claimed the whole proceeds of the land, subject to the widow's dower. The lands were held by Michael Steffey and Mary Crumrine, the children and heirs

of Eve Steffey, deceased, in undivided moieties, in fee. On the 3rd of May 1854, the supposed contract was entered into in these words:

"Agreed, on the 3rd of May 1854, between Michael Steffey, of Carroll county, State of Maryland, of the one part, and William Crumrine, of the said county and State, of the other part: William Crumrine has bargained and sold unto Michael Steffey all his rights, claims and interest for three hundred dollars, and did receive on it two hundred dollars, and the said William Crumrine is to give the said Michael Steffey a good right and title, and the said Michael Steffey is to pay, half yearly, twenty dollars, until the hundred dollars is paid. Given under our hands and seals, this 3rd day of March 1854, it being all his and her rights, titles and claims of Eve Steffey, wife of John Steffey. Being the seal property of sixty-seven acres and a half. As witness our hands and seals, this 3rd of May 1854.

WILLIAM CRUMRINE, (Seal.)<br>MARY CRUMRINE, (Seal.)

Signed, sealed and delivered in presence
      of—*Eli Fuhrman.*"

The obligors in the contract, are husband and wife; the property to be disposed of, the inheritance of the latter, in fee, with the marital rights of the former. As far as the interest and rights of the husband are involved, the contract, aided by the parol proof, and connected with the notes given for the purchase money, (two of which indicate with certainty the subject of the contract,) is sufficient to convey, in equity, William Crumrine's estate, whatever it may be, although it does not appear, from the testimony, whether he is merely entitled *jure mariti*, or has a tenancy by the curtesy.

As to Mary Crumrine's interest, the question is not what she intended to sell or convey, but whether she is competent, in law or equity, to bind her estate or interest in the

Latrobe, Trustee, *vs.* Mayor & C. C. of Balto.

land, in the mode adopted. The date of the contract brings it within the operation of the Acts of Assembly prescribing the manner in which married women shall be barred of their inheritance or dower at that time. The Acts of 1715, ch. 47, sec. 11; 1807, ch. 52; 1808, ch. 73; 1825, ch. 58; 1830, ch. 164, control such conveyances. These Acts have been heretofore rigidly construed, for the protection of that large and interesting class of society. The cases in which they have been applied, are too numerous and familiar to require citation. The more recent leading decisions are *Chaney & Wife, vs. Tipton*, 3 *Gill*, 327, and *Johns vs. Reardon*, 11 *Md. Rep.*, 465. According to these authorities, the instrument signed by Crumrine and wife is inoperative and void, as to the latter. The decree must therefore be reversed, and the case remanded for further proceedings.

*Decree reversed and cause remanded.*