(Decided 18th June, 1874.)

---

# Mary C. Gebb *vs.* Abraham P. Rose, William P. Howell, and others.

*Deed from a Married woman directly to her Husband, in Trust—Mode of conveyance of a Married woman's Estate, not held to her separate use, to her Husband. When mistake in the Deed of a Féme covert, cannot be corrected by the Court.*

Where property was conveyed before the adoption of the Code, by a deed to a married woman generally, and not to her separate use, the marital rights of her husband attached, and a deed by her of the same property directly to her husband, in trust, without his joinder in the grant, is void.

The only mode by which a *féme covert* can convey her estate, not held to her separate use, to her husband, except in the execution of a power, is by means of a conveyance to a third person for his use, he joining with his wife in the deed.

Where there is an omission of some statutory requirement in the deed of a *féme covert,* essential to its validity, the mistake cannot be corrected by the Court.

Appeal from the Circuit Court of Baltimore City.

The bill of complaint in this case filed by the appellant, charged that, she lived in the family of John P. Wollet and Asseneth his wife, from some time in the year 1842,

until their respective deaths, which occurred in 1872, the wife dying in February and the husband in June of that year; that they never had any children, and during the entire period of her residence with them, she was treated in all respects as an adopted child; that from the time she was able to work, no servant was employed by the said John P. Wollet and wife, down to the time of their deaths, and that for more than fifteen years, she did all the work and service of the family; that in consideration of such labor and service, and for the purpose, and with the intention of compensating the complainant therefor, the said Asseneth Wollet on the 18th day of October, 1871, executed a deed of certain property in the city of Baltimore, which had been conveyed to her by Mary Ann Kell and others, by deed dated 28th of October, 1856; that the said first mentioned deed was executed and acknowledged before a justice of the peace of Baltimore city; that John P. Wollet was present at the time of the execution and fully consented to the same, and then and there offered to sign said deed, but was informed by the scrivener, that his signature thereto was not requisite; that the said John P. Wollet survived his wife and recognized the validity of said deed in all respects.

The bill further charged that the appellees claiming to be heirs-at-law of Asseneth Wollet, had instituted an action of ejectment in the Superior Court of Baltimore City against the tenant of the complainant, and that she as the lessor of said premises had appeared and pleaded to the action. The bill prayed that an injunction might be issued to restrain the appellees from further prosecuting their action of ejectment; that the trust in the deed of the 18th of October, 1871, might be declared valid, and for general relief. The nature of the two deeds mentioned in the bill of complaint, is stated in the opinion of this Court. The Circuit Court passed an order refusing the application for an injunction, and the complainant appealed.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*John C. King,* for the appellant.

The property conveyed by the deed in question was the wife's estate. It was conveyed directly to her by the deed of Mary Ann Kell and others, dated October 28th, 1856. *Buchanan vs. Turner,* 26 *Md.,* 5; *Mutual Ins. Co. vs. Deale,* 18 *Md.,* 45.

The title to the estate being vested in the wife, she may act as a *féme sole* with reference to it, and the right to dispose of it accompanies the ownership, unless she is restrained from so doing by the express language of the instrument under which she claims. *Cooke vs. Husbands,* 11 *Md.,* 503; *Koontz vs. Nabb,* 16 *Md.,* 549; *Michael vs. Baker,* 12 *Md.,* 169; *Chew's Adm'rs vs. Beall,* 13 *Md.,* 360; *Buchanan vs. Turner,* 26 *Md.,* 4; *Hall & Hume vs. Eccleston,* 37 *Md.,* 518.

Before the adoption of the Code, 1860, a married woman, in equity, occupied the position of a *féme sole* in respect to her separate estate, and she could charge or incumber it even in modes different from the specific power, but still within the *jus disponendi. Tiernan vs. Poor,* 1 *G. & J.,* 227; *Price & Nisbet vs. Bigham's Exrs.,* 7 *H. & J.,* 296; *Hulme vs. Tenant,* 1 *Equity Cases,* 505.

The *jus disponendi* is incident to her separate estate, and she may give it to whom she pleases, or charge it with the debts of her husband. *Methodist Episcopal Church vs. Jacques,* 3 *Johns. Ch.,* 77; *Stead vs. Nelson,* 2 *Beav.,* 245; 2 *Story's Equity,* 1399, 1399 (*a.*) And the mere formality of the charge or incumbrance is unimportant. *Tiernan vs. Poor,* 1 *G. & J.,* 227.

The concurrence of the husband and grantee in this case was amply sufficient to establish a trust in favor of the complainant. He was actually present at the execution of the deed, and expressed consent to its execution, and took

a distinct interest under the deed.. "Husband present at the execution of a mortgage, and assenting to the execution, is as effectually bound by the mortgage as if executed by himself." *Egerton vs. Thomas,* 5 *Seldon,* 40; *Leitch vs. Wells,* 48 *N. Y.,* 607.

The Code does not deprive the Courts of their well defined and long established equity power and jurisdiction to enforce the contract of a *féme covert.*

The remedy by injunction is not confined to any point of the proceedings at law, but it may, upon a proper case, be granted at any stage of the suit. In all cases, where by accident, mistake or fraud, or otherwise, a party has an unfair advantage in proceedings in a Court of law, which must necessarily make that Court an instrument of injustice, equity will interfere. *Story's Equity, secs.* 874, 885, 886; see *secs.* 169, 172.

*Jos. Blyth Allston,* for the appellees.

The property in question was in no sense the "separate estate" of Asseneth Wollet. She did not hold it under sec. 2, Art. 45, Code Pub. Gen. Laws, and the deed contains no terms to constitute the real estate therein conveyed her sole and separate estate. The Acts of Assembly of 1842, ch. 293, 1853, ch. 245, govern the case, and it is settled law that they did not invest her with a "separate estate" in the property. Such being the nature of her title, the deed, can have no effect as an agreement to convey; for it is only in regard to the "separate estate" of a *féme covert* that she can make a contract that equity would recognize and enforce. The nature of Asseneth Wollet's title and the date of the deed, from her, brings that conveyance within the terms of sec. 11, Art. 45, Code Pub. Gen. Laws. That section enables the *féme covert* (as to her general property, as in the case at bar,) only to the extent and in the mode therein prescribed. That the General Assembly of Maryland itself so intended, is clearly

shown by its subsequent enactment of the statutes of 1867, ch. 223, sec. 2, and of 1872, ch. 270, which otherwise would not have been necessary. *Preston, Trustee, vs. Fryer, et al.*, 38 *Md.*, 222 ; *Hall & Hume vs. Eccleston*, 37 *Md.*, 510 ; *Buchanan vs. Turner*, 26 *Md.*, 1 ; *Cooke vs. Husbands*, 11 *Md.*, 492 ; *Michael vs. Baker*, 12 *Md.*, 158 ; *Chew's Admr's, vs. Beall*, 13 *Md.*, 348 ; *Six vs. Shaner*, 26 *Md.*, 415-443 ; *Schindel vs. Schindel*, 12 *Md.*, 108 ; *Bridges and Woods vs. McKenna*, 14 *Md.*, 258 ; *Mutual Insurance Co. vs. Deale*, 18 *Md.*, 26, 47 ; *Weems vs. Weems*, 19 *Md.*, 334–345 ; *Burton, et al. vs. Marshall*, 4 *Gill*, 487 ; *Norris vs. Lantz and Hyde*, 18 *Md.*, 269 ; *Nusz, et al. vs. Grove*, 27 *Md.*, 391, 401 ; *Nicholson vs. Helmsley*, 3 *H. & McH.*, 409 ; *Gelston vs. Frazier*, 26 *Md.*, 329 ; *Frazier vs. Gelston*, 35 *Md.*, 314 ; *Steffey vs. Steffey, et al.*, 19 *Md.*, 5 ; *Johns vs. Reardon*, 11 *Md.*, 470 ; *Morris vs. Harris*, 9 *Gill*, 28.

The deed from Asseneth Wollet is voluntary and without valuable consideration. It is clear that the work and service mentioned in the bill was not rendered with a view to pay ; they were purely gratuitous—the simple performance of the duties and offices incident to the appellant's situation with people of that condition of life. Indeed, the allegation in the bill that this deed was executed in consideration of such work and service, is corrected and shown to be inadmissible by the very terms of the deed, which states the nominal consideration of five dollars, and the real one of love and affection.

Equity will not aid the defective execution of an instrument in favor of a volunteer. *Story's Eq. Juris.*, sec. 433 ; *Adams' Equity*, 78–80, (margin.)

The failure of John P. Wollet to join in the execution of the deed from his wife, was not accidental. It was a deliberate act founded upon erroneous legal advice. In short, a mistake of law against which Equity will not relieve. *State vs. Reigart*, 1 *Gill*, 29 ; *Six vs. Shaner*, 26 *Md.*, 415 ; *Frazier vs. Gelston*, 35 *Md.*, 314.

ALVEY, J., delivered the opinion of the Court.

The title to the property attempted to be conveyed by the deed of the 18th of October, 1871, was acquired by Asseneth Wollet, then a married woman, by deed from Mrs. Kell, and others, in 1856. The property was not conveyed to the separate use of the grantee, but was conveyed to her generally, and consequently the marital rights of her husband attached. Holding the estate by this title, Mrs. Wollet, while under the disability of coverture, on the 18th of October, 1871, attempted to convey the property directly to her husband, in trust, without his joinder in the grant. This, it is clear, she was incompetent to do, by any conveyance executed by her alone. The deed of a *féme covert* is, by the common law, simply void; and except as to her separate estate, settled upon her by deed or will, and with respect to which she may be empowered to act as a *féme sole*, she can only convey her property in the manner prescribed by statute. In this State, the manner prescribed for the conveyance of the property of a *féme covert* is by the joint deed of herself and her husband. *Code, Art. 45, sec.* 11. And as this statutory mode of conveyance was not observed, the deed is void, and therefore without any effect whatever. *Shep. Touch., Prest. Ed.,* 56, *and note*; *Zouch vs. Parsons,* 3 *Burr,* 1805; *Concord Bank vs. Bellis,* 10 *Cush.,* 277; *Lowell vs. Daniels,* 2 *Gray,* 161.

The only mode by which a *féme covert* can convey her estate, not held to her separate use, to her husband, except in the execution of a power, is by means of a conveyance to a third person for his use, he joining with his wife in the deed. That this may be done has been expressly decided in *Thatcher vs. Omans,* 3 *Pick.,* 521.

The trusts declared in the deed before us, and upon which the property was attempted to be conveyed, were, 1st, to the sole and separate use of the grantor for life; 2nd, after her death, then for the use and benefit of her

husband, John P. Wollet, for his life ; and, 3rd, after his death, the property to become the absolute estate of Mary Catharine Gebb, the complainant in this cause.    The consideration stated in the deed was the love and affection of the grantor for her husband and the complainant, with a mere nominal money consideration superadded.

Notwithstanding the deed is absolutely void, as we have seen, the present application is to have the heirs-at-law of Asseneth Wollet, who died in 1872, restrained from the assertion of their rights to the property,—the husband, John P. Wollet, having also died soon after the death of his wife ; and that the trust in the deed in favor of the complainant may be declared to be valid, and for general relief.

But clearly no relief can be afforded.    The instrument involved is without effect even as a contract to convey,— the least objectionable footing upon which it could be placed.    For, except in regard to the separate estate of a *féme covert*, all her covenants, contracts and agreements, in Courts of law, as well as of equity, are absolutely null and void, and she is under no obligation and cannot be compelled to perform them, whether entered into by herself, or on her behalf by her husband, with or without her consent.    This has been repeatedly declared by this Court.    *Burton vs. Marshall,* 4 *Gill,* 487 ; *Norris vs. Lantz and Hyde,* 18 *Md.,* 260 ; *Steffey vs. Steffey,* 19 *Md.,* 5 ; *Six vs. Shaner and Wife,* 26 *Md.,* 415.    This principle only yields to the statutory authority and mode for enabling married women to bind or bar their estate, except in those cases where, in reference to their separate estate, they may be empowered to act as *fémes sole.  Johns vs. Reardon,* 11 *Md.,* 470.    And as the deed, treating it as a contract to convey, could not be enforced against Mrs. Wollet, if she were living, so neither can it be enforced against her heirs.

It was urged in the argument for the complainant that, as the imperfections of the instrument were occasioned by

ignorance and mistake, a Court of Equity is competent to correct the instrument, and to give it such effect as the parties intended it should have. But, to say nothing of the nature of the consideration displayed upon the face of the instrument itself, this is not a case for the exercise of the equitable jurisdiction for the correction of mistakes. The mistake here, if it can be called such, was one of law simply; a want of knowledge as to·what the law required to make the deed good and effective. Such mistake or want of legal knowledge forms no proper ground for the assistance of a Court of Equity, in the absence of actual fraud and imposition. Besides, the principle is well established, and results from the propositions before stated, that where there is an omission of some statutory requirement in the deed of a *féme covert,* essential to its validity, the mistake cannot be corrected by the Court. *Dickenson vs. Glenney,* 27 *Conn.,* 104; *Grapengether vs. Fejerbary,* 9 *Iowa,* 163; *Martin vs. Dwetly,* 6 *Wend.,* 9.

It follows that the order appealed from, refusing the injunction, must be affirmed, and as the bill makes no case for relief it will be dismissed.

> *Order affirmed, and*
> *bill dismissed.*

(Decided 18th June, 1874.)