Holland v. Moon.

HOLLAND v. MOON.

1. CHANCERY PRACTICE: *Reforming deeds; married women.*
   Courts are not in the habit of reforming deeds of married women.

Holland v. Moon.

2. MARRIED WOMEN: *Conveying by power of attorney.*

A married woman has no power to convey lands by power of attorney.

3. SWAMP LANDS: *Patents to, as evidence of title.*

Patents for swamp lands are conclusive evidence of the legal title, and must prevail, unless the opposing claimant shows a prior right or superior equity.

APPEAL from *Yell* Circuit Court in Chancery.

Hon. T. M. GIBSON, Special Judge.

*J. T. Harrison,* for appellant:

Argument on the facts.

*W. N. May,* for appellee:

Argument on the facts.

SMITH, J. We gather from the record that, in 1854, Thomas B. Moon, Sr., the ancestor of the present appellee, held a certificate of purchase from the State for the southeast quarter and southeast quarter of southwest quarter of section 21, and northeast quarter of section 28, all in township 6 north, range 19 west; the same being swamp and overflowed lands, lying and situate in Yell County. That in the summer of 1855, being about to leave the State, he delivered some personal property, and conveyed all of his lands in said county, consisting of some 600 acres, to Henry M. Carden. This deed having been lost, and the public records of that county destroyed during the late war, the form of it, that is to say, whether it was absolute on its face, or whether a trust or condition was expressed, does not appear. But certain it is that the sole purpose and consideration of it was to indemnify and save harmless the said Carden from certain liabilities which he had incurred in behalf of the said Moon, and in particular from his

liability as surety upon Moon's note for $250, payable to one Huggins. At September term, 1855, of Yell Circuit Court, Huggins obtained a judgment against the makers of said note. Moon died October 8, 1855, leaving him surviving a widow, and, as his sole heir at law, the appellee, Thomas B. Moon, Jr., then only a few months old. There has never been any administration upon his estate. After his death, execution was sued out upon this judgment, and was levied upon the first and last, but not upon the second of the above described tracts, and the other lands embraced in the deed, as the property of either Moon or of Carden. The lands were brought to sale in March, 1856, and were purchased by Lemoyne, a lawyer, in a body, for $100. But there was a previous arrangement between him and Carden, that he should bid the lands off, and hold them in trust until his claim, and the balance due on Huggins' judgment, should be paid, when he was to convey to the widow. We infer that the condition was performed, since we find that Lemoyne afterwards conveyed all of the land that he had bought at Sheriff's sale to Mrs. Moon.

And right here intermeddling with the land of this infant should have ceased. Carden's deed, which was nothing but a mortgage, in whatever terms it was couched, had been satisfied. The design of the creator of the trust—indemnity for his surety—had been accomplished. The Huggins debt had been paid, and Mrs. Moon had a claim against her husband's estate for the $300 which she had advanced. But she seems to have been impressed with the idea that the removal of the incumbrance vested the title in her, and gave her the right to dispose of the land. For, on the tenth day of March, 1859, she, then married to Dawson, joined her second husband in a mortgage of all the lands except the tract of forty acres above mentioned,

to Lemoyne, to secure the payment of Dawson's note to him for $410. And, on the same day, they executed a power of attorney to Lemoyne to sell and convey the same lands. On the thirty-first day of May, 1859, Lemoyne, as attorney in fact for Dawson and wife, sold and conveyed to the appellant, with covenants of general warranty, the quarter section first above mentioned for $960, which was paid. Between March 10, 1859, and October 20, 1859, Dawson and wife, either directly or through the medium of their said attorney, sold and conveyed to one Peetman, or his wife, or to them jointly, the quarter last above mentioned. And, on the day and year last aforesaid, the Peetmans, husband and wife, conveyed the same land to the appellant for the price of $1,400, then paid. On the sixth day of October, 1860, Dawson and wife executed and acknowledged a deed to the appellant for the forty-acre tract. The consideration expressed is $400, which was proved to have been paid. In 1876 patent deeds for the three tracts were issued by the State to the heirs and legal representatives of Thomas B. Moon, deceased, and Dawson and wife quit-claimed to the heir, who brought ejectment' against Holland for the two tracts first above described, and the west half of the third.

Holland denied that the senior Moon had died seized of the lands, setting up the several conveyances under which he claimed; pleaded the statute of limitations and adverse possession; averred a misdescription in the deed of Dawson and wife to him, the land being placed in section 28, whereas, the land which was bought and intended to be conveyed lay in section 21; made his answer a cross-bill against the Dawsons, and prayed for a reformation.

The case was transferred to the equity docket. Dawson and wife denied that there was any misdescription of the premises in the deed of October 6, 1860, or that Mrs. Daw-

Holland v. Moon.

son had ever set up any claim to the southeast quarter of the southwest quarter of section twenty-one, or that it was included in the Sheriff's levy or sale, or deed to Lemoyne. The plaintiff, considering the new matter set up in Holland's answer as in the nature of a cross-bill, filed a paper which he denominates a reply, but the only purpose of which was to controvert and put in issue said new matter. The cause went to a hearing, and the court decreed for the plaintiff.

1. CHANCE-RY PRACTICE: Reforming deeds of married women.

To the southeast quarter of the southwest quarter of section twenty-one Holland has no documentary title, nor any claim at all except an alleged equity to have the mistake in the deed of October 6, 1860, corrected. But courts are not in the habit of reforming the deeds of married women. *1 Bishop on Married Women, sec. 599; Shroyen v. Nickell, 55 Mo., 264; Martin v. Hargardine, 46 Ill., 322; Leonis v. Sazzarovich, 55 Cal., 52; Drury v. Foster, 2 Wallace, 24; Knowles v. McCamby, 10 Paige Ch., 342; Gibb v. Rose, 40 Md., 387; Townsley v. Chapin, 12 Allen, 476.*

The evidence of Holland's title to the southeast quarter of section twenty-one is contained in the deed made by Lemoyne, as attorney in fact for Dawson and his wife. This carried nothing. The wife could not convey by power of attorney, and Dawson had no estate in the land which he could convey to another. *1 Bishop on Married Women, sec. 602,* and cases there cited; *Kelley on Contracts of Married Women, p. 104.*

2. MARRIED WOMAN: Can not convey by power of attorney.

In *Mott v. Smith, 16 Cal., 533,* Mr. Justice FIELD, now of the Supreme Court of the United States, said: "A married woman can not invest another with a power to sell any interest which she may possess in real estate, in the absence of any statute in this State. To the efficiency of a conveyance by a married woman, it is essential that she join with her husband in its execution, and state, on a private

examination, at the time, separate and apart from him, and without his hearing, that she executed the same freely, without fear of him or compulsion, or undue influence from him, and that she does not wish to retract its execution. This private examination and the determination of the will as to the retraction of execution, are not matters which can be delegated to another."

See, also, *McDaniel v. Grace, 15 Ark., 465*, where the subject was discussed, but not decided, as the point did not legitimately arise.

The derivation of Holland's title to the west half of the northeast quarter of section twenty-eight has been given above. He exhibits his deed from the Peetmans, but the deed which he claims vested title in them was not in his possession, nor even known to be still in existence, and the record of it had been destroyed. It is, indeed, averred, in a loose sort of way, that the Dawsons, either by themselves or through their attorney, had conveyed this parcel of land either to James C. Peetman or to his wife, Eleanor, or to them jointly. And there is no express denial by the Dawsons or the plaintiff of the execution of such a conveyance. Beyond the implied admission in the pleadings, there is no proof in the transcript of the existence or contents of the missing deed, nor who the parties to it were. If, as is most probable, the deed was made by Lemoyne, as attorney in fact, it was a nullity. If it came directly from the Dawsons, and had been properly executed and acknowledged, we might protect a purchaser like Holland, who has paid his money, in good faith, for an apparently good title, without notice of the plaintiff's equity, notwithstanding the making of such a deed would have been a fraud upon the plaintiff. But concerning those things which do not exist, and those which do not appear, the rule of decision is the same.

3. SWAMP   The patents are conclusive evidence that the legal title is
LANDS:
Patents to in the plaintiff, and that title must prevail, unless Holland
as evidence
of title.  shows a prior right or a superior equity.

The statute of limitations is not involved in the case. Holland's occupation began during the plaintiff's infancy, and he brought his action very soon after he attained his majority.

Affirmed.

EAKIN, J.   I concur in the *decision* of the court in this case, upon the ground that there was no proof that the power of attorney from Dawson and wife was executed in accordance with the forms prescribed by law; and because that should have been affirmatively shown, if it had been done.

I am not prepared to say that a power of attorney so executed would be void. The authorities upon this point are in conflict, which is largely due to different statutory provisions in different States.

I think under a proper construction of all our statutes *in pari materia*, such a power should be sustained.