RUFUS W. APPLEGARTH AND ROBERT L. PRESTON, PERMANENT TRUSTEES, *vs.* MATILDA B. WAGNER, ET AL.

*Insolvency—Preferences—Fraudulent Conveyance—Equitable Lien—Agreement to Execute Mortgage—Laches.*

While a trustee in insolvency takes the property subject to all valid liens upon it, yet his right to contest the validity of claims is not limited to what the insolvent himself could do.

When it is sought to enforce an oral agreement to execute a mortgage of property as security for debt, the contract must be proved with ·clearness and accuracy, and as against creditors of the debtor, the party asking for the establishment of such equitable lien must seek relief within a reasonable time.

A man borrowed a sum of money from his sister, giving to her therefor a single bill payable three years after date. There was at the time an oral agreement that the borrower should execute a mortgage or some other instrument by which his interest in certain real estate would be transferred as security for the debt. No conveyance or mortgage was executed until four years afterwards, when a deed conveying the property absolutely to the grantor's sister was made. The day after its execution the grantor made an assignment for the benefit of creditors. He was afterwards adjudicated an insolvent and the trustees in insolvency filed a bill in equity to vacate the transfer. *Held,*

1st. That the agreement between the borrower and lender to treat the property in question as security for the debt cannot be recognized as creating an equitable lien, but is void as against the creditors of the grantor and the trustees in insolvency.

2nd. That the execution of the deed was an attempt to secure a pre-existing debt and void under Code, Art. 47, sec. 24.

Appeal from a decree of Circuit Court No 2, of Balti-

more City (STOCKBRIDGE, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Rufus W. Applegarth* and *Robert Ludlow Preston*, for the appellants.

*J. J. Alexander* (with whom was *C. W. Nash* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

The bill was filed in this case to have a deed, executed February 8, 1893, by Wm. H. Wells to Matilda B. Wagner, his sister, declared null and void. The day after the execution of the deed Wells and his partner, James L. Most, trading as Most and Wells, made a deed of trust to Rufus W. Applegarth for the benefit of their creditors, and on the 6th day of March, 1893, a petition was filed by certain creditors of that firm, alleging that they had committed acts of insolvency within sixty days preceding the filing of the petition, contrary to the insolvent laws of the State. Among other grounds relied on, it was charged that Wm. H. Wells had fraudulently assigned the property involved in this case to Mrs. Wagner with the intention of hindering, delaying and fraudulently preventing the creditors from attaching or otherwise seizing it for their just debts and she was enjoined from selling, disposing of or in any way interfering with it pending the determination of the application. Most and Wells were subsequently adjudicated insolvents, but the record does not show upon what specific grounds, beyond what may be inferred from the allegations in the petition. Mr. Applegarth was made permanent trustee and filed the bill in this case on March 12, 1894. Afterwards, Mr. Preston, the other appellant, was appointed a co-trustee and made a party plaintiff. The bill having been dismissed this appeal was taken.

The defence relied on in the answer is that on January 1, 1889, Wells gave Mrs. Wagner a single bill for one thousand dollars due by him to her, payable three years after date, with interest payable quarterly, executed by him and Richard C. Wells as surety, " and which debt he had, in addition to giving said note, promised to secure to her upon his interest in said property by a deed of assignment thereof, and said money was loaned by her to him upon the express agreement at the time of said loan that she should be so secured by such conveyance or assignment of his interest in said property to her, but he inadvertently omitted to execute such a deed until the one above mentioned was executed." The answer also alleges that one thousand dollars was the full value of Wells' interest in the property. The single bill described in the answer was offered in evidence and the only witnesses examined were the three parties to it. Wm. H. Wells was called by the appellants and examined as to the execution of the two deeds and his knowledge of his insolvency when the deed was made to Mrs. Wagner. Upon cross-examination the single bill was produced and he was examined with reference to the loan. The important part of his testimony is embraced in the following questions and answers : " Please state the circumstances under which you gave this document (the single bill) to Mrs. Wagner ?" Answer. " I gave this to Mrs. Wagner when I borrowed the money from her, so as to secure the money." " Did you make any other agreement with Mrs. Wagner at the time you gave her the note ?" Answer. " Yes, sir, I told her she could have my interest in the houses ; promised to make it good to her." " Was the property to be conveyed to her ?" Ans. " Yes, sir, I think that was the understanding at the time." " At the time she lent the money ?" Ans. " Yes, sir." Being asked why they made a joint note instead of having his brother Richard endorse it, he said : " I don't know why, except we went on the note together. Thought two of us on the face of the note it would be all right." Mrs. Wagner testified that her brother agreed at

the time of the loan to give her his share in the houses that the family owned, his one-sixth, that being the property which was conveyed by this deed. On cross-examination she testified as follows : " When were you to have this interest ?" Answer. " Well, no time was stated, but that was to secure me, and I just felt that I was to get it." " Do you mean to say that you then and there purchased his interest with the $1,000 that you gave him ?" Answer. " Well, I considered that that was mine ; I felt secure." " What was yours ?" Answer. " His one-sixth of this property." " Why did you not have it conveyed to you if you thought it was yours ?" Answer. " The thought never occurred to me to .do so." " At no time ?" Answer. " Well, I would occasionally think it had better be done and I guess it was just negligence." Richard C. Wells was asked to state the circumstances under which he became a party to the note and said : " I owed my brother, William H. Wells, at that time, $1,000, and I paid it back to him and forgot to have my name taken off this note. The reason I did not endorse the note, I wanted to save protest charges in case it was not paid at maturity." His evidence also showed that the undivided sixth interest conveyed by the deed was not worth more than one thousand dollars.

Just what did occur between these parties when the loan was made is by no means clear. Mrs. Wagner seems to have understood that her brother's interest in the property was in some way to secure her, and the testimony of herself and Wm. H. Wells is to the effect that it was to be conveyed to her by absolute deed, as was afterwards done. But the single bill and conduct of the parties with reference to it are in irreconcilable conflict with that theory. It was payable two years after date and the interest was payable, *and actually paid*, quarterly. If the thousand dollars had been intended as purchase money for the property, a note with personal security, payable three years after date, would not have been given by the vendor and all the witnesses speak of the transaction as a loan. In the case of *Nicholson* v.

*Schmucker*, 81 Md. 464, this Court sustained the deed involved in that case because the evidence showed that the property had actually been paid for at the time of the purchase. The deed was not delivered immediately, but it was during the next month and that delay was satisfactorily accounted for. The evidence satisfied the Court that the transaction was *bona fide* and such as the Act of 1890, chap. 364, expressly saves from the effect and operation of the insolvent laws, and there was nothing to justify a Court of Equity in setting aside the deed.

But this case differs widely from that. The conduct of the parties being wholly at variance with the theory that there was a contract of sale of the interest of Mr. Wells, it only remains to determine whether there was such an agreement to secure the loan by a mortgage on the property as can now be enforced against the appellants. It is true that a trustee in insolvency takes the property subject to all valid liens against it, but his control over it and his right to recover it is not wholly limited to what the insolvent himself might do. As between the insolvent and the other contracting party, the former might be estopped from denying, or resisting the enforcement of a contract, but the trustee is the representative of all the creditors, is chosen by or for them and hence his powers and rights are not entirely measured by those of the insolvent. If Mrs. Wagner and Mr. Wells were the only parties concerned in this controversy, the Court could hold him to a stricter accountability than it can hold the appellants. We cannot assume he has no other separate creditors who are interested in his property. Two others were returned by him in the insolvent proceedings, and in the distribution of the insolvent estates the partnership creditors may become interested in disputing some of the claims against him personally. In *Cole* v. *Cole*, 41 Md. 301, the proceeding was against the party who had agreed to execute the mortgage, and his wife, to whom the property had been conveyed, with notice of the agreement. This Court held that relief could be granted under

the circumstances of that case, the agreement having been clearly established. It was upon the principle that equity regarded that as done which ought to have been done. Although the facts in that case established a clear case of attempted fraud, the decision approached dangerously near the line drawn by the Statute of Frauds, and was only sustained because there had been a performance on one side and the refusal to perform on the other side amounted to a fraud. But the case of *Nelson* v. *Hagerstown Bank*, 27 Md. 51, is more applicable to the one before us. It is said on page 70 that "the rule that equity regards as done that which was agreed to be done, it is admitted will authorize an agreement to execute a mortgage to be treated in equity as a mortgage, provided it can be done consistently with the rights and equities of others and in a reasonable time after the alleged promise was made. But a Court of Equity will not enforce a specific performance of a contract for a mortgage on real estate, unless the contract is plain, explicit and in writing, for where there is doubt created on the mind of the Court, no relief will be granted." In passing it may be observed that in the case of *Six* v. *Shaner*, 26 Md. 415, it was said: "It was conceded, and cannot be denied, that a mere parol agreement to execute a mortgage of real estate cannot be enforced in equity because of the Statute of Frauds," but what is afterwards intimated in that case and in 41 Md. *supra*, must be deemed sufficient to justify the concession, without stopping to discuss it, that there are exceptions to the general rule requiring such agreements to be in writing, but the general principles so well stated in 27 Md. *supra*, apply with great force to this case. The alleged agreement to execute a mortgage or some other instrument to secure this debt, remained unexecuted for over four years, and no attempt or even request was made to have it done, but the day before the debtor made a deed of trust for the nominal benefit of his creditors he executed this absolute deed. It can scarcely be said that was "in a reasonable time after the alleged promise was made." Nor can we see

how it could then " be done consistently with the rights and equities of others." If it had been clearly and explicitly established that an agreement had been made between these parties in January, 1889, to secure this debt on the property, it would be putting the powers of a Court of Equity, broad as they are, to a severe test to enforce a secret lien in favor of one thus negligent and indifferent to her own rights as against those who have or may have suffered from such delay. The statutes of this State with reference to the execution and recording of mortgages may well give place to laws of more practical use if they can be thus so easily evaded.

The Court, after discussing our registry laws, well said in 27 Md. 74, "Courts of Justice will not permit these laws, made for the prevention of fraud and the protection of purchasers and creditors to be avoided by the substitution of a parol promise or a written communication, that the party in possession of the property, and the ostensible owner of it, will at some indefinite period of time execute a mortgage on it. To sanction such an evasion of the law would be highly injurious to the public interest, in derogation of the rights of creditors and well calculated to destroy confidence among commercial men."

Whatever then the original agreement was between the parties, we cannot recognize it as a subsisting equitable lien, existing before the execution of the deed, but must declare it void and nugatory as against the creditors of Wm. H. Wells and the appellants who represent them. If Mrs. Wagner were in Court asking a decree for a specific performance her suit would fail, because the proof does not show with sufficient clearness and accuracy what the contract was, and, as against third parties, because she permitted an unreasonable time to elapse before seeking relief, as it could not be granted her consistently with the rights and equities of others. Where the insolvent laws of this State are applicable these principles apply with even greater force. Section 24 of Art. 47 of the Code, in force when

the deed was made, declared that any deed, conveyance, etc., made, or lien created, by any person belonging to any of the classes mentioned in section 14 (which included Mr. Wells), when insolvent or in contemplation of insolvency, "shall be *prima facie* intended to hinder, delay and defraud the creditors of the person by whom the same is made, and the burden of proof shall rest upon him and the grantee to explain the same and show the *bona fides* thereof," provided the creditors avail themselves of the provisions of that Article of the Code. All preferences, save such as are expressly excepted, are prohibited by that Article and declared to be void. The execution of the deed, under our view of the case, was an attempt to secure a pre-existing debt, was such a preference as is prohibited by the statute, and is therefore void. As was held in *Manning* v. *Carruthers*, 83 Md. 1, the appellants are authorized to maintain a bill in equity to vacate the deed. The decree dismissing the bill must be reversed, and a decree passed granting the relief prayed for.

*Decree reversed and cause remanded*
*with costs to the appellants.*

(Decided December 1st, 1897).